2 Dec.
343

# DEFECTIVE SIDEWALK—EVIDENCE.

[Huron County Circuit Court, November Term, 1894.]

MONROEVILLE, OHIO, v. LIBBIE B. WEIHL.

1. EVIDENCE OF WITNESS WHO SAW A DEFECTIVE SIDEWALK ON THE DAY FOLLOWING AN INJURY.

In an action for personal injuries resulting from a defective sidewalk, plaintiff introduced the testimony of a witness who observed the sidewalk in question after the injury, and who, upon cross examination, stated that he did not see the walk immediately after, or upon the day of the accident, but saw it on the day following. *Held,* Taking into consideration the circumstances, the description of the walk as it appeared to various witnesses at the time of the accident, that the admission of such testimony was not error prejudicial to the defendant.

2. TESTIMONY OF A NON-PROFESSIONAL WITNESS AS TO WHETHER A PERSON APPEARS SICK.

Although it is not competent for a non-professional witness to go into detail and determine the technical disease with which a person is affected, he may be permitted, upon the general matter of his health, to testify whether a person appears sick or not.

3. IMPEACHMENT OF A WITNESS' TESTIMONY WITHOUT LAYING GROUNDS FOR CONTRADICTION.

It is in conflict with the general rule of law that a witness whose deposition has been taken, without cross-examination as to particular statements that he may have previously made, inconsistent with his then testimony, should be contradicted by evidence of those statements; and *Held,* on the facts of the case at bar, to be error prejudicial to the defendant.

4. PHYSICIANS' STATEMENTS NOT COMPETENT AS PART OF THE RES GESTAE.

Where the principal fact to be proven is the condition of a person's health of body, a physician's remarks as to the nature of a prior ailment, made at the time it existed, are not part of the *res gestæ.* Application and limitation of the rule, see opinion.

5. PLAINTIFF'S KNOWLEDGE OF CONDITION OF A SIDEWALK ON WHICH SHE WAS INJURED.

Motion to take case from the jury on the ground that plaintiff had the same knowledge of the situation of the walk, and its condition, as the village had: The court held without stating the facts, that it should be a very clear and very strong case to warrant the allowance of such a motion.

6. SAME—SOME VIGILANCE IS REQUIRED OF MUNICIPAL OFFICERS TO FIND OUT WHAT WALKS ARE OUT OF REPAIR.

The duties of inspection and ascertainment of defects in sidewalks which devolve upon a village, do not rest upon a citizen, and a charge to a jury which implies that the plaintiff was as much bound to know the condition of the walks as the village officers, is erroneous.

7. BURDEN OF PROOF TO SHOW EXERCISE OF CARE—JURY TO DETERMINE WHEN IT SHIFTS.

When it is claimed that plaintiff's testimony shows a want of care on her part, the court will not charge the jury as a matter of law that " the burden of proof is upon the plaintiff to show * * * * that she was in the exercise of due care." This would be assuming that a case has arisen for the application of the rule regarding the shifting of the burden of proof, a fact that the jury should find. The true rule is that when, if an ordinary person walking upon a sidewalk would have seen that it was dangerous to go upon, and the jury find that it was open, apparent, and patent that it was so, and that, notwithstanding that, the plaintiff did go along and was injured, then the burden is shifted.

**8. CHARGE TO THE JURY—TAKING DIFFERENT PROPOSITIONS TOGETHER.**

Each distinct proposition of a charge to the jury should be a complete statement within itself, containing every element belonging to the proposition, but when a proposition is incomplete or inadequately expresses the whole law upon the subject, the verdict will not be set aside if what immediately follows the defective part is sufficiently explanatory to prevent the jury from being misled.

**9. USE OF "MIGHT" FOR "WOULD" OR "SHOULD."**

Criticism of the use of the word "might" for "would," or "should," in such expressions as "If by the exercise of diligence the party *might* have discovered," etc.

BENTLEY, J. (orally).

This is an action in error brought to reverse the judgment of the court of common pleas upon a verdict rendered by the jury in this case in favor of *Libbie B. Weihl* v. *The Village of Monroeville, Ohio,* for injuries alleged to have been received by the plaintiff below, from falling upon a certain sidewalk, upon a public street, within said village, which was at the time out of repair and dangerous, and which had been so out of repair and dangerous for some length of time, and of which condition it is charged the village officers had notice.

A motion was made for a new trial after the rendering of a verdict by the jury in favor of the plaintiff below, and being submitted to the court was overruled and a bill of exceptions was thereafter allowed and filed, and duly made a part of the record of the proceedings.

Quite a large number of exceptions were taken to the various rulings of the court during the trial, several of which are now urged upon our attention, and certain of which seem to have been abandoned; that is, certain exceptions that appear noted in the record are not specially called to our attention. So I will simply deal with such as have been noticed by counsel, the first being on page 65, at the bottom, and also on page 66. A witness was testifying in behalf of the plaintiff as to what he had observed of the sidewalk in question, *after* the injury to the plaintiff below. He had testified in examination in chief, and as would appear from the reading of the record of his testimony, he went along this sidewalk in question the same afternoon that the plaintiff below was injured upon it. Upon cross-examination he indicates that he did not go down there at that time, but that it was some time during the next day, the day after the injury, and he asserts in his cross-examination that he did not state that he was there the afternoon of the injury and did not intend to so state, thus indicating that perhaps the testimony that he intended to give had been mistaken or misapprehended. At the close of that matter, this occurred: Question put to him: "Now, you say it was the next day after; it wasn't the same day?" Answer: "No, sir, I never said it was the same day." Defendant's counsel: "I ask the court to instruct the jury that they are not to consider the testimony of the witness as to the condition of the sidewalk the next day after the injury occurred." Court: "The testimony is competent." An exception was noted.

It is true that the condition or situation of an object, soon after it has borne some part in a material controversy, may be given in evidence—a description of it, as found shortly after the circumstance happened, is competent; however, there comes a time when it would be too remote to have any proper bearing. There might be an intervening circumstance also, or intervening circumstances which would indicate that it was incompetent and immaterial. In this case there was no direct testimony that the walk remained in the same position at the place in question from the time of the injury until the next day when this man passed along. But, taking into consideration the circumstances—the description of the walk as it appeared to various witnesses at the time of the accident, and afterwards when this man saw it, we are unable to conclude that this was error prejudicial to the defendant below. It might, or might not have any great bearing owing to the circumstances, the situation, and the time intervening, etc. There being no indication of a change in the sidewalk at that place, the inference might be drawn,

that nothing had been done there after the accident. We are unable to say that the court of common pleas was in absolute error in ruling that the testimony was competent.

A nonprofessional witness was allowed to testify as to the health of the plaintiff below at a certain period, and objection was made to that, but it was overruled and exception was noted. Under the rules of law regarding such matters, as laid down in two cases in the state, we think it is not incompetent for a person to speak of the health of another—that is, in that general way. Of course, it might not be competent for a nonexpert, or nonprofessional witness to attempt to go into detail and determine the technical disease with which a person was afflicted; but upon the general matter of his health, as to whether a person appears sick or not, we think the ordinary witness may be allowed to speak. So that exception is not allowed.

At the close of the testimony in behalf of the plaintiff below a motion was made to take the case from the jury, because the testimony showed, as it was claimed by the defendant below, that the plaintiff had as much knowledge of the situation at that walk—of its being out of repair and its dangerous condition—had the same means of knowledge that the village had, and that the plaintiff should be held to the same rule, and that therefore, as a matter of law, evidence for her ought not to be held to make a case against the village. It should be a very clear and a very strong case where a motion of that kind is allowed. We think the testimony in this case does not present such a situation as would have warranted the court of common pleas in allowing that motion, and to refuse it was not error.

Objection was made to certain testimony offered by the plaintiff in rebuttal. The defendant below in this case had substantially entered a general denial in its answer to the claim of the plaintiff below and had put in issue the fact of her being injured, the extent of the injury, the occasion of the injury and the means by which the supposed injury was inflicted and the amount of damages suffered etc., and also set up affirmatively that if the plaintiff below was injured it was owing to her own negligence.

In the course of the trial, the defendant below sought to show, in answer to the plaintiff's testimony showing that she had been badly injured on this occasion, and had been confined to her home a long while by reason of her injuries complained of, and had had uterine difficulties—I say the defendant below, in answer to such testimony, sought to show two things or matters that might be viewed under two aspects: The defendant below was claiming all the while that she was not injured in the manner that she complains of; the village also sought to show that she had, in fact, had the difficulties that she complained of as resulting from this injury long before that, and had been treated on account of them and was, in fact, an invalid and unhealthy in this respect, before the happening of this injury at all. The village had called Doctor Callen who had testified to things tending strongly to show, if his testimony were true, that this claim of the village was correct; at least, that there was some basis for it. The witness Callen spoke by deposition which had been taken sometime before the trial. In the course of the deposition, the Doctor testified to being called by her, or for her in the year 1889, I think—this injury having occurred in 1892; that he had treated her for uterine difficulties and that substantially like symptoms then prevailed that she claimed to have prevailed after the infliction of this injury.

Quite a considerable testimony was given by Doctor Callen respecting this matter—regarding his treatment of her.

On cross-examination it was sought to affect this testimony, and the doctor was inquired of as to whether he had ever treated her prior to this injury more than once or on more than on one occasion, and he said he had not. Then inquiries were made of him as to whether or not the difficulty that he had treated her for at that time was not a lung difficulty and not a uterine difficulty at all, and the doctor denied that in general terms. He denied that he had treated her

for that, and denied that that was what ailed her at the time, and in general terms. said that he had never said so at any time. But he was not inquired of in cross-ex-amination at that time or at any time as to his having made such a statement at any particular time or place or to any particular person; but the questions were simply general, whether he had ever said so at any time or place. Therefore, under the ordinary rule as usually observed, it may be said that the foundation had not been laid to contradict him as to such statements by proof of statements by him made to individuals, conflicting with the testimony that he was then giving by deposition.

Nevertheless, upon the trial, various witnesses were called, or two or three, at least, were called, to testify as to what Doctor Callen had told the witnesses re-spectively, or said in their hearing regarding this matter; that is, testimony was given indicating that the Doctor had said, in the presence of various individuals, that this girl, on the occasion when he was treating her, had lung fever and that he treated her for lung fever, etc., statements which, if he made them, would tend to show that the testimony he was now giving by deposition was not true, or might not be true; at least, conflicted with it. Objection was made to all of this testimony and the court overruled each objection, and the testimony was allowed to go to the jury. It is claimed now, by the plaintiff in error, that this was sub-stantially prejudicial error for which the judgment of the court of common pleas ought to be reversed.

On the other hand, the counsel for the defendant in error insist that the testimony, as it was given, was competent, not because it was a mere contradic-tion of the witness Callen, but because these alleged statements by him were expressions connected with acts of his respecting the girl's sickness and in treating her, explanatory of those acts, and therefore, under the general rule, became part of what is called the *res gestæ*, and that therefore, they might be given because the acts themselves were proper to be given.

I will state in general, that from the testimony given by these various wit-nesses as to what Doctor Callen said, it does not appear that the statements were made in connection with any particular act that the Doctor was doing at the time; even if that would render them competent. The statements that Doctor Callen said so, are general, and while it might be gathered that the remarks were made during the general time when he was in attendance upon this lady as her physi-cian, yet none of them appear to have been in connection with his dealing out medicine, or giving directions about the dealing out of any medicine for her, or at the very time he was making an examination of her. The simple statement is that on one occasion he said she had lung fever. The claim here is that he said that in her presence, indicating perhaps, that it was when he was there at the house, and possibly, on the occasion when he may have observed her sufficiently to make a certain examination, enough to determine what was prob-ably the trouble with her. But there is no one of these questions that is partic-ularly connected with any particular act of the doctor, and many of these state-ments may have been made, not at the house at all, and not in immediate connec-tion with any talk regarding her treatment; in fact, we are impressed, from the appearance of the record, that counsel were not careful in their examination, to show that these statements were made in connection with some particular act, and that, perhaps, there was not then in the mind of the counsel the particular reasons for urging the testimony that is now argued. Neither would it appear that it must have been from the understanding that these were a part of the *res gestæ*, that the court overruled the objections and allowed the testimony; but it simply stands in the manner that I have indicated, that the witness whose deposi-tion was taken, without being cross-examined as to the particular facts, as to the particular statements that he may have made inconsistent with his then testi-mony, was contradicted by evidence showing that he had made statements in con-flict with his testimony. This is in conflict with the general rule of law. The question is, whether it should be regarded as sufficiently prejudicial to overthrow

this verdict and the judgment founded upon it. While certain rules of evidence are accepted as being in a sort of general way acknowledged though perhaps not very definitely fixed by adjudication in this state, our Supreme Court on quite a number of occasions has dealt specifically with this very question, and I will call attention first to the case of *King* v. *Wicks* in the 20 Ohio, page 87. The syllabus reads:

"Before a witness can be contradicted by proving statements out of court at variance with his testimony, he must be first inquired of, upon cross-examination, as to such statements, and the time, place and person involved in the supposed contradiction."

Judge RANNEY, delivering the opinion in that case, on page 89, says this:

"The leading case in England was that of the Queen, reported in 2 Broderik & Bingham, 314, Lord ABBOTT, C. J., delivered the unanimous opinion of the judges, holding that evidence to contradict or impeach a witness, by proving that he had made different statements out of court, could not be received until the witness was first asked, upon cross-examination, whether or not he had said or declared that which was intended to be proved. But the counsel for the plaintiff in error is mistaken in supposing that the doctrine rests alone or mainly upon this decision. It has been followed in England by the cases of *Angus* v. *Smith* (and quite a number of cases cited in the opinion which I will not now take time to read).

Judge RANNEY proceeds: "And is the clear and undeniable rule of the English courts at this day."

Then follows a long citation of authorities. Then Judge RANNEY proceeds:

"It is believed to be the rule in every state in the Union where the question has been raised, except Massachusetts and Maine. It is also the doctrine laid down in the most approved elementary books. Mr. Greenleaf, in his work on Evidence, after stating that the credit of a witness may be impeached by proof of statements out of court contrary to what he has testified at the trial, adds: ' Before this can be done, it is generally held necessary, in the case of verbal statements, first to ask him as to the time, place and person involved in the supposed contradiction. It is not enough to ask him the general question, whether he has ever said so and so, nor whether he has always told the same story; because it may frequently happen that, upon the general question, he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said.' "

And so the opinion proceeds in that line. Again, in 15 Ohio State, page 1, the second proposition of the syllabus states the rule as it has been laid down, as I have already stated.

A very extended opinion was delivered in that case. On page 10, of the court's opinion, this is said regarding the Queen's case arising in England:

"And one of the questions submitted to the twelve judges in the Queen's case, was, whether, when the alleged impeaching matter was discovered after the witness had been examined, it might not be given in evidence without calling back the witness? The answer delivered by Chief Justice ABBOTT was, that the only effect of a subsequent discovery, would be to allow the witness to be called back for further cross-examination, if still within reach. And they were all of opinion, that, according to the usage and practice of the courts below, and according to law as administered in those courts, the proposed proof could not be adduced without a previous cross-examination of the witness as to the matter thereof."

The court say further, on page 12 of the opinion:

"The rule has frequently been applied to depositions, also, to the case where it was proposed to impeach the testimony contained therein by showing that the witness, subsequently to his examination, had made statements inconsistent with his testimony, or said that what he had sworn to was false."

The same authorities are cited under that statement, and the court proceeds:

"In *Kimball* v. *Davis*, the court say: 'The declarations of witnesses whose testimony has been taken under a commission, made subsequent to the taking of the testimony, contradicting or invalidating their testimony as contained in the depositions, is inadmissible in evidence, if objected to. The only way for a party to avail himself of such declarations is to sue out a second commission. Such evidence is always inadmissible, until the witness whose testimony is thus sought to be impeached has been examined upon the point, and his attention particularly directed to the circumstances, so as to furnish him an opportunity for explanation or exculpation.' The opinion of the court in this case was delivered by Chief Justice NELSON; the same Judge who decided *Losee* v. *Losee*, cited by plaintiff in error, and before referred to. The decision was affirmed in the court of errors, Chancellor WALWORTH delivering the leading opinion.

"We are aware that the application of the rule to depositions has, in some cases, been denied, or applied with various modifications (citing certain authorities). But a majority of the court are of opinion, that the weight of authority, as well as the principle upon which the rule is founded, requires the application of the rule to the present case; and that the district court did not err in overruling the proposed evidence."

It will be seen there that in cases of depositions, such declarations might be given in evidence, if they were made after the deposition of the witness had been taken; and it was strongly urged and it will be seen that that afforded a sort of equitable circumstance that it might be supposed ought to be taken into consideration. The witness's deposition may have been taken at a distant place and it might be exceedingly inconvenient to recall him for cross-examination, and yet even such a case, the court held, does not vary the rule.

Now, in this case, even that ground for admitting such testimony does not appear. For all that appears in the record, all of these various statements of admission by Doctor Callen, may have been made and were made, in fact, long before his deposition was taken, and for anything that appears, the plaintiff and her counsel may have been fully aware of that at the time of the cross-examination of the Doctor himself.

Doctor Callen's testimony was regarded as a very material matter in this case, a matter which we can easily surmise, from the appearance of the record, was largely commented upon by counsel. It was material in two aspects of the case; one was in determining the amount which the jury ought to award the plaintiff for damages, because, if the whole injury had been inflicted by the accident that was complained of in her petition, certain damages might have been awarded, but if they but augmented an old trouble or brought about a recurrence of an old disease; if she was not entirely of sound health in these respects before, this would bear upon the question as to the amount of damages, not, of course, to determine that she was not injured by this recurrence, but it was a matter that should be considered in determining the amount. And then again the testimony may have had a bearing upon some of the more general issues of the case; for instance, the plaintiff was claiming and asserting, not only in her petition, but by her testimony before the jury and by the witnesses called in her behalf, that until this time she was sound and healthy in respect to the ailment that she complained of after the injury. She was a witness in the case, and that was her position before the jury, and while what occurred might or might not have been recognized by the jury as influencing their belief in her testimony, yet, as a matter of law, these contradictory statements of the witness Callen, were not competent for the jury to consider. It might possibly have had in the minds of some of the jurors quite an effect upon her general position and general statements under oath.

So, if this was erroneous, as we think without question it was, we are unable to see why it should not be regarded as prejudicial. It might have been prejudicial.

The chances are that it had more or less bearing. While we can well see that the testimony of Doctor Callen, if he had made these other statements that are attributed to him, would naturally excite in the counsel appearing for the plaintiff a desire to shake his testimony, and all that, yet there still remains the ordinary and orderly way by which that should be accomplished, and that being departed from in this case, we think here was error, manifest and prejudicial.

In regard to the objection that was made on page 418, that question is of no moment now; but I might say that that was a discretionary matter that we should not regard as error. We had occasion in a case that came up in our court at Toledo, to look into the question as to whether a physician's remarks as to the nature of an injury, are to be considered a part of the *res gestæ*. A woman had been injured there upon the sidewalk on one of the streets. Her knee had been injured and the doctor was called and examined it. I think the doctor had died before the case was presented to the court; at least, his testimony was not in the record, but witnesses were called and testimony given as to what the doctor had said when he had examined, on the very occasion when he examined the knee. We considered that very carefully because it was one of the principal matters in controversy at the time. I have not before me, neither can I recollect definitely the authorities cited, but we found authorities bearing directly upon it, and I think a very strong and decisive case was in Massachusetts, in which it was held that such statements of the physician were incompetent, and the result of our investigation in that case was that it was prejudicial error and we reversed the judgment, it seems to me wholly upon that ground.

Where the principal question is about the action of the doctor in giving the medicine, etc., what he may say at the time he is giving the medicine, might, in certain inquiries, be of great importance; for instance, some question might come up as to the propriety of his giving the medicine or administering the remedy that he did, or doing the things that he did, or as to the state of mind that he was in at the time. It might well be said that there are many occasions, when what the doctor said in reference to the administering of remedies, was of the *res gestæ*. But here, the principal fact to be proven was the actual state of the woman's health of body in these particulars; that was the main and material fact. That the doctor said anything about it, is of no particular moment. That is not the primary fact. The administering of any particular remedy is not the primary fact. But the actual situation of the woman is capable of being proven.

If, in such case, the doctor testified that she was in a certain condition, the fact that he gave certain remedies which, according to the general learning of the profession would not at all be applicable to that disease which he claimed she had, or if the doctor had made expressions, stating what his treatment had been, or stating what the condition of the woman had been, throwing doubt upon his present testimony, that would all be material of course, and proper to be given, when the proper foundations are laid for it. And in certain cases, some of these statements might be a part of the *res gestæ*, but not here.

The next exception that was argued is on page 431, regarding the giving of certain requests prior to the argument to the jury.

This request was preferred by the plaintiff to the court with the request that it be given prior to the argument to the jury and reads as follows:

"It was the legal duty of the village of Monroeville to keep the sidewalks in said village in repair, so as to be in a reasonably safe condition, for pedestrians or persons walking upon said sidewalks, both by night and by day; and a failure or neglect to perform that duty renders the defendant liable for all damage directly resulting from such failure."

The first part of that proposition is correct; that is, it is the duty of the village to keep its sidewalks in repair, but this is added, "the failure or neglect to perform that duty renders the defendant liable for all damages directly resulting from such failure." That in a certain sense is true; but if given, it is to be applied to this particular case, and care must be taken about giving generally

correct principles in particular cases. This might be supported by argument that a failure or neglect to perform that duty rendered the defendant liable for injuries directly resulting from such failure even in a case where contributory negligence is alleged, because it might be argued that in case it resulted from negligence of the plaintiff, or that the negligence of the plaintiff materially contributed to the injury, it can not strictly be said to have directly resulted from the fault of the village, that is, to have resulted wholly from that; but, at the same time, each distinct proposition ought to have within it, its own elements of safety. But while other distinct propositions following it, may take out of it any sting or improper sentiment that there may be in it, yet it is always better to have each charge full-orbed in itself.

Following this was the second request, given probably at the same time, closing with these words:

"Your verdict should be for the plaintiff, unless the plaintiff was herself guilty of a want of ordinary care in passing over the said walk in question."

Now, if these things were presented alone, we would not have consented to reverse the judgment for any error in that first proposition, because we think, so far as it might be said to be at all incomplete or inadequate in expressing the whole law upon the subject, sufficient follows immediately after it, so that we should not suppose that the jury were misled to the prejudice of the defendant below; and yet, I call attention to it to indicate that the first request might be subject to criticism in not excluding certain things from it.

The defendant also asked the court to say to the jury that "the burden of proof is upon the plaintiff to show, by a preponderance of the evidence, that she was, at the time she fell upon the sidewalk, exercising ordinary care."

This is contrary to the general rule, but it is claimed here that in this particular case it was correct, because the counsel claimed that from the testimony of the plaintiff herself, and of her witnesses, a case has arisen where there is a suggestion or a presumption of her want of care, and that therefore, it was a case where the burden of proof would be shifted upon her to show that she was in the exercise of due care. But the trouble with this is that the court was asked, as a matter of law, to assume what the jury should find in this particular, and to say that it was actually as a matter of law, a case for the application of this rule regarding the shifting of the burden of proof. We think the court would not have been warranted in doing that, and its rejection of that was not error.

The sixth request of the defendant below is:

"That if the jury shall find that the plaintiff had had equal opportunity with the village authorities to know or ascertain the condition of the sidewalk at the place where she fell, it will be their duty to hold her to the exercise of the same degree of care to avoid injury as the defendant is bound to exercise, that is, ordinary care; and if by the exercise of ordinary care, the plaintiff could have easily avoided the walk where she fell, and gone to her destination by passing along the north side of the street, or if by the exercise of such care, she could have passed along the walk where she fell and avoided falling, the verdict should be for the defendant."

That request, if given, would have been an assumption by the court of common pleas that it was her duty to have avoided this walk when she came to it, if she had such knowledge, or was to be charged with such knowledge, that if she could have avoided it with ordinary care, she should have avoided it; that if she could have avoided it when she came to it, by the exercise of ordinary care, she ought to have done it. This instruction was properly refused, we think.

The 7th request, following this, reads:

"If the jury shall find that the sidewalk at the place where the plaintiff fell was out of repair and unsafe or dangerous, and so appeared to persons of ordinary intelligence, it was the duty of the plaintiff, when passing along on the occasion when she fell, to exercise ordinary care to avoid injury, and the burden of

proof is upon her to show by a preponderance of the evidence that she exercised such care."

Contrary to the 6th and the 2d requests of the defendant below, this did not involve the court of common pleas in the assumption that a case had arisen when the burden of proof was shifted upon the plaintiff below, but it submitted that matter to the jury and it rested upon one hypothesis as given in this request, that if the jury should find that, the burden would be shifted upon her.

Now, we think that the idea manifest in that, and what the jury would have understood was, that if any ordinary person walking along there, would have seen that this was unsafe and dangerous to go upon, and if the jury should find that it was open, apparent and patent that that was so, and that notwithstanding that, the plaintiff did go along there and was injured, then the time had come when the burden was shifted upon her to show some excuse for her going there, notwithstanding this apparent danger and difficulty.

We have studied that with care and it seems to us that that embodies the true rule governing in a case of that kind; that it may be well said as a matter of law, that when those circumstances appear, there does arise a suggestion or presumption, as the Supreme Court puts it in various ways, such as is spoken of in the case in the 28 Ohio St. and 35 Ohio St., the presumption or suggestion of the plaintiff's negligence, which would devolve upon her the burden of excusing herself. There may be various ways by which she might excuse herself, of course, but if that appear alone, just this circumstance, it would seem manifest that she would be guilty of contributory negligence, just the same as a person would be who was about to cross a railway track when the train was coming in full sight and it was apparent to anybody and everybody that the train was liable to overtake him at the crossing, and that the person was of ordinary intelligence, with good faculties and eyesight, etc. There would arise under such circumstances an implication, a presumption that the plaintiff was guilty of negligence in attempting to cross under circumstances of that kind, and if there was any excuse for him, his attention being attracted, or anything of the kind excusing him, the proof ought to be made manifest by him or her, and we think the rejection of the 7th request was error.

I might say in this connection, that that standing alone if it were not that testimony which we think erroneous was allowed to go to the jury, we probably would not have found that sufficiently prejudicial in this particular case to have warranted a reversal. But we think it is erroneous.

"If the plaintiff knew the dangerous character of the sidewalk, or if in the exercise of ordinary care she might have known it, then she was guilty of contributory negligence and she cannot recover in this action even though the defendant was in fault and negligent."

This was the 11th request by the defendant below for instruction to the jury and was rejected. We think this does not with sufficient care state the rule of law as applicable to an occasion of this kind; but it would seem to embody the idea that the plaintiff was just as much bound to know of the defective condition of the walk as was the village officers, which we think is not true. It is not only the duty of the village officers to keep the walks in repair but to exercise some vigilance in finding out whether they were not out of repair. It was their duty to keep them in repair and if they were so generally out of repair that their attention was attracted to it, they owed some duty of inspection and ascertainment which the plaintiff below did not. Then again, there is this form of expression which is generally adopted in the record in this case and perhaps in most cases; but it seems to us, at least, that it is improper to use it in such an action. I refer to the word "might," "if, by the exercise of reasonable diligence the party 'might' have discovered" so and so. That may be used in many cases and perhaps is, but it seems to us the meaning is not exactly the same as it would be if the expression was, "if, by the exercise of reasonable diligence, he *would* have discovered, or *should* have discovered. He might have

discovered by the use of reasonable diligence, or might not have discovered by the exercise of the same diligence. The question in such a case is, if he had exercised reasonable diligenee, *would* he have discovered; *would* it have resulted as a fact with sufficient certainty that this condition would have been ascertained or noticed.

At any rate, we think it was proper for the court to reject the 11th request, as was done. Several paragraphs or sentences of the charge of the court were excepted to and appear noted upon the margin; but we think in this case to hold as fatal the errors which are said to exist, or the criticisms which are urged against them, would indicate a too rigid requirement; it would be subjecting the charge to too close a criticism, hypercriticism, almost, to say that it embodied erroneous propositions such as would probably mislead the jury. We think the court did not err in the respects mentioned. But for the reasons that I have already stated, errors that I have pointed out, the judgment will be reversed, the verdict set aside and the cause remanded to the court of common pleas for a new trial.